UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | CIVIL ACTION NO.: 5:19-CV-5117 |
| Plaintiff | SECTION: |
| VERSUS | |
| BELLA VISTA VILLAGE PROPERTY OWNERS ASSOCIATION | JUDGE: TIMOTHY L. BROOKS |
| Defendant | MAGISTRATE: |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Philadelphia Indemnity Insurance Company ("PIIC"), which brings this action for declaratory judgment against defendant, Bella Vista Village Property Owners Association ("BVPOA"); and upon information and belief avers as follows:

1.

This Complaint for Declaratory Judgment is brought in accordance with 28 U.S.C. §§ 2201 and 2202.  An actual case or controversy exists between PIIC and BVPOA.

## PARTIES

2.

PIIC is a foreign insurance company organized and existing under the laws of the State of Pennsylvania, where it also has its principal place of business.

3.

Upon information and belief, defendant, BVPOA, is a domestic non-profit corporation organized and existing under the laws of the State of Arkansas and has its principal place of business in the State of Arkansas.

## JURISDICTION AND VENUE

4.

This Honorable Court has jurisdiction over the subject matter of this action in accordance with 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.

In accordance with 28 U.S.C. § 1332(c)(1), PIIC is a citizen of the State of Pennsylvania where it is incorporated and maintains its principal place of business.  Upon information and belief, BVPOA is a citizen of the State of Arkansas, where it is a domestic non-profit corporation and maintains its principal place of business.  Complete diversity exists, therefore, between PIIC and BVPOA.

6.

The amount in controversy for a declaratory judgment is the value of the object of the litigation.  *Shelter Mutual Insurance Company v. Taylor, et al*, 2012 WL 174809, ___ F. Supp. 2d ___ (W.D. Ar. 2012); *Usery, et al v. Anadarko Petroleum Corporation, et al*, 606 F.3d 1017

(8th Cir. 2010).  The object of the litigation is the demand for defense and indemnity coverage made by BVPOA under policies of insurance issued by PIIC.  *See Carrick Trucking, Inc. v. Lamberth,* 2011 WL 1085616, ___ F. Supp. 2d ___ (W.D. Ar. 2011) (In a case for specific performance on a contract, the Court used the contract price to determine jurisdictional amount). Information provided by BVPOA indicates that indemnification is being sought in the amount of at least $4,000,000, which is the amount committed by BVPOA for the calendar year 2019 in its settlement with the ADEQ. Additionally, the *Macomber* plaintiffs prayed for damages "in excess of the minimum jurisdictional amount for diversity of citizenship suits in the United States District Courts."  Accordingly, the demand solely for indemnity coverage made by BVPOA under the PIIC policies exceeds the jurisdictional amount of $75,000.00, exclusive of interest and costs, and does not include BVPOA's additional demand for defense fees and costs in the *Parsons* and *Macomber* Suits discussed below.

7.

Venue is proper in this judicial district under 28 U.S.C. § 1391(b).  The damages for which BVPOA is seeking indemnity coverage arise from alleged fire and pollution to property located in Benton County, Arkansas.  Thus, this civil action is being brought in the judicial district in which the property giving rise to the claimed damages is situated, in accordance with 28 U.S.C. § 1391(b)(2).

**FACTUAL BACKGROUND**

8.

Multiple claims and/or lawsuits have been brought against BVPOA arising out of a fire at the Trafalgar Road Stump Dump (hereinafter "Stump Dump Fire"), which Stump Dump, upon

information and belief, was operated by BVPOA as a dump site for Bella Vista property owners to dispose of organic and construction waste materials.

**A.  *James Parsons v. BVPOA Property Owners Association, et al.***

9.

On February 6, 2019, James Parsons filed the lawsuit entitled *James Parsons v. Bella Vista Property Owners Association, et al.,* bearing docket number 04CV-19-263 in the Circuit Court of Benton County, Arkansas.  In his complaint and two subsequent amended complaints, Mr. Parsons names BVPOA, Tom Fredericks, Blue Mountain Storage, Cooper Communities, Inc. ("CCI"), and the Arkansas Department of Environmental Quality ("ADEQ") as defendants. Mr. Parsons alleges that the Stump Dump located on Trafalgar Road in Bella Vista, Arkansas, was an unpermitted dump site.  The Stump Dump allegedly was owned by Tom Fredericks, as is Blue Mountain Storage.  Mr. Parsons alleges that neither Blue Mountain Storage, BVPOA, nor CCI was licensed to operate the Stump Dump, in violation of Arkansas law.

10.

BVPOA allegedly leased the Stump Dump from Blue Mountain Storage from 2003 until 2016.  During that time, the watchdog group run by Mr. Parsons allegedly received numerous complaints from people living in the area about the dumping.  A member of the group also allegedly witnessed CCI dumping concrete mixing drums in the Stump Dump in 2008.

11.

A fire occurred at the Stump Dump, and the ADEQ issued an Emergency Order to address a response to the fire.  The governor pledged taxpayer money to start a plan to put out the fire.  It is alleged that estimates to put out the fire and/or remediate the site are between $21,000,000 and $37,000,000.  The response action plan states there are unknown quantities of

petroleum products and hazardous substances in the Stump Dump.  BVPOA operated the Stump Dump for years allegedly without proper oversight and allowed illegal and hazardous materials to be placed in the Stump Dump.  The ADEQ allegedly negligently failed to act with due diligence in allowing the site to continue operations when it knew the operators were allowing illegal and hazardous materials to be dumped at least as of 2008, which allegedly has caused great environmental damage to the air quality and also to the health of the public.  Mr. Parsons seeks no damages for himself.  Rather, he is seeking to have public funds expended in responding to the Stump Dump Fire returned to the public treasury.

12.

Upon information and belief, this action has now been dismissed as to BVPOA.

13.

BVPOA tendered the *Parsons* Suit to PIIC for defense and indemnity and seeks recovery of defense costs under policies issued by PIIC to BVPOA from 2007 through 2019.

**B.  *Curtis Macomber, et al. v. Samuel Care Enterprises, Inc., et al.***

14.

On November 27, 2018, Curtis Macomber and Tiffany Macomber, individually and as parents of their minor children, Ezra Macomber and Trevor Macomber, filed an original Complaint in the lawsuit entitled *Curtis Macomber, et al. v. Samuel Care Enterprises, Inc., et al.,* bearing docket number 04CV-18-3332 in the Circuit Court of Benton County, Arkansas, alleging they are residents of Benton County, Arkansas.  The *Macomber* plaintiffs claim that certain property referred to as the Stump Dump was used by residents of the city of Bella Vista, with the city's permission, to dispose of various flammable and hazardous waste substances.

15.

This property allegedly was acquired by Samuel Care Enterprises, Inc., d/b/a Brown's Tree Care ("BTC") in the fall of 2018. BTC allegedly received, stored, handled, and disposed of various waste and other hazardous substances throughout the Stump Dump site. BTC allegedly operated a disposal facility on the Stump Dump site, which disposed of, or caused the disposal of material leading to the release of noxious smoke and hazardous waste, resulting in a condition of pollution. In August 2018, BTC allegedly allowed and/or caused a fire to be ignited at the Stump Dump site, despite a city-wide burn ban, which fire continues to burn, creating smoke pollution causing medical and property damage. Despite demand being made, BTC failed and/or refused to take any steps to remedy the health hazard.

16.

On March 14, 2019, the *Macomber* plaintiffs filed a First Amended and Supplemental Complaint, which named additional plaintiffs, as well as defendants. In addition to the original plaintiffs, Stacey and Bart Lewis and Norvil and Mary Joan Lantz were also made plaintiffs. The *Macomber* plaintiffs added as defendants Cooper Communities, Inc. ("CCI"), Cooper Homes, Inc. ("CHI"), BVPOA, Thomas Fredericks, Fredericks Construction Company, Blue Mountain Storage, LLC, and BTS Equipment, LLC.

17.

The *Macomber* plaintiffs allege that BVPOA operated the Stump Dump, and at times even tried to regulate it, for over a decade. BVPOA allegedly posted rules and signage at the entrance, while also utilizing bulldozers to bury waste to facilitate receiving additional waste. BVPOA allegedly operated as many as 14 illegal dump sites around Bella Vista.

18.

The *Macomber* plaintiffs allege that in July 2018, a fire ignited at the Stump Dump and spread to subterranean waste improperly disposed of at the site.  The fire allegedly produces hazardous smoke, which is a threat to public health and safety.

19.

The *Macomber* plaintiffs assert causes of action for negligence, private nuisance, public nuisance, trespass, and under the Arkansas Solid Waste Management Act.  The *Macomber* plaintiffs seek damages to either repair or restore their properties to pre-release conditions or for the difference in the value of their properties pre- and post-fire; for the loss of use and enjoyment of their properties; for discomfort, annoyance, disruption, inconvenience, loss of peace of mind, fear, and fright; economic damages for costs and expenses incurred; past, present and future bodily injury, pain, suffering, and mental anguish, as well as past and future medical expenses; past and future lost wages; punitive damages; and injunctive relief regarding the abatement of the fire and future fires or nuisances emanating from the Stump Dump.

20.

BVPOA tendered the *Macomber* Suit to PIIC for defense and indemnity and seeks insurance coverage from PIIC under numerous policies issued by PIIC to BVPOA from 2007 through 2019 for the claims asserted by the *Macomber* plaintiffs.

**C.  *Claims Asserted by the ADEQ***

21.

On December 21, 2018, the ADEQ issued an Emergency Order because of the discovery of hazardous substances at an illegal disposal site on Trafalgar Road, the release of which may have presented an imminent and substantial endangerment to the public health and safety or to

the environment.  The Emergency Order contained certain findings of fact regarding the Stump

Dump Fire. According to the Order, on August 2, 2018, the ADEQ received a complaint of an

underground fire at an illegal disposal site on Trafalgar Road.  The illegal disposal site allegedly

was established by BVPOA in 2006 and closed in 2016, and was unsupervised for approximately

two years.

22.

The ADEQ ordered that a consultant/contractor be hired to formulate a plan for

extinguishing the fire and removal of the hazardous substances.  The contractor was to collect,

package, and transport all hazardous substances and wastes in accordance with all applicable

regulations.  The contractor also was to properly dispose of all hazardous substances and wastes

and provide a detailed billing to the ADEQ, unless a responsible party was identified and

assumed responsibility.

23.

BVPOA has entered into a settlement agreement with the ADEQ to manage and

extinguish the fire producing allegedly hazardous smoke, manage and remove the waste, and

restore and stabilize the site.

24.

BVPOA seeks insurance coverage from PIIC for the above actions taken against BVPOA

by ADEQ under numerous insurance policies issued by PIIC to BVPOA over multiple policy

periods from October 2007 to October 2019.

## THE INSURANCE POLICIES

25.

The PIIC Policies (collectively, the "Policies") at issue in this civil action, and under which declaratory judgment is sought, are identified by the following policy numbers and information:

| Policy Number | Policy Period | Policy Type / Limits of Liability / Attachment Points |
|---|---|---|
| PHPK264151 | 10/1/07-10/1/08 | Commercial Package Policy<br>    CGL Coverage Part - $1,000,000 Each Occurrence/$2,000,000 General Aggregate/$2,000,000 Products/Completed Ops Aggregate<br>    Inland Marine Coverage Part – Limits per schedule<br>    Property Coverage Part – Limits per schedule |
| PHSD281591 | 10/1/07-10/1/08 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD282156 | 10/1/07-10/1/08 | Flexiplus Five<br>    Directors & Officers Liability - $5,000,000 per period<br>    Employment Practices Liability - $5,000,000 per period<br>    Fiduciary Liability - $1,000,000 per period<br>    $5,000,000 aggregate, all parts |
| PHUB095956 | 10/1/07-10/1/08 | Commercial Excess Liability - $10,000,000 Each Occurrence/ General Aggregate and $10,000,000 Completed Operations Aggregate, excess liability coverages of PHPK264151 or Retained Limit |
| PHPK349484 | 10/1/08-10/1/09 | Commercial Package Policy<br>    CGL Coverage Part - $1,000,000 Each Occurrence/$2,000,000 General Aggregate/$2,000,000 Products/Completed Ops Aggregate<br>    Inland Marine Coverage Part – Limits per schedule<br>    Property Coverage Part – Limits per schedule |
| PHSD363686 | 10/1/08-10/1/09 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD363689 | 10/1/08-10/1/09 | Flexiplus Five<br>    Directors & Officers Liability - $5,000,000 per period<br>    Employment Practices Liability - $5,000,000 per period<br>    Fiduciary Liability - $1,000,000 per period<br>    $5,000,000 aggregate, all parts |
| PHUB252695 | 10/1/08-10/1/09 | Commercial Excess Liability - $10,000,000 Each Occurrence/ General Aggregate and $10,000,000 Completed Operations Aggregate, excess liability coverages of PHPK349484 or Retained Limit |

| | | |
|---|---|---|
| PHPK475412 | 10/1/09-<br>10/1/10 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD457716 | 10/1/09-<br>10/1/10 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD457235 | 10/1/09-<br>10/1/10 | Flexiplus Five<br>   Directors & Officers Liability - $5,000,000 per period<br>   Employment Practices Liability - $5,000,000 per period<br>   Fiduciary Liability - $1,000,000 per period<br>   $5,000,000 aggregate, all parts |
| PHUB286087 | 10/1/09-<br>10/1/10 | Commercial Excess Liability - $10,000,000 Each<br>Occurrence/ General Aggregate and $10,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK475412 or Retained Limit |
| PHPK629679 | 10/1/10-<br>10/1/11 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD562051 | 10/1/10-<br>10/1/11 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD562054 | 10/1/10-<br>10/1/11 | Flexiplus Five<br>   Directors & Officers Liability - $5,000,000 per period<br>   Employment Practices Liability - $5,000,000 per period<br>   Fiduciary Liability - $1,000,000 per period<br>   $5,000,000 aggregate, all parts |
| PHUB322597 | 10/1/10-<br>10/1/11 | Commercial Excess Liability - $10,000,000 Each<br>Occurrence/ General Aggregate and $10,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK629679 or Retained Limit |
| PHPK778097 | 10/1/11-<br>10/1/12 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD663465 | 10/1/11-<br>10/1/12 | Employed Lawyers Coverage - $2,000,000 aggregate |

| PHSD674794 | 10/1/11-<br>10/1/12 | Flexiplus Five<br>  Directors & Officers Liability - $5,000,000 per period<br>  Employment Practices Liability - $5,000,000 per period<br>  Fiduciary Liability - $1,000,000 per period<br>  $5,000,000 aggregate, all parts |
|---|---|---|
| PHUB360505 | 10/1/11-<br>10/1/12 | Commercial Excess Liability - $10,000,000 Each<br>Occurrence/ General Aggregate and $10,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK778097 or Retained Limit |
| PHPK926098 | 10/1/12-<br>10/1/13 | Commercial Package Policy<br>  CGL Coverage Part - $1,000,000 Each<br>  Occurrence/$2,000,000 General Aggregate/$2,000,000<br>  Products/Completed Ops Aggregate<br>  Inland Marine Coverage Part – Limits per schedule<br>  Property Coverage Part – Limits per schedule |
| PHSD785550 | 10/1/12-<br>10/1/13 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD785560 | 10/1/12-<br>10/1/13 | Flexiplus Five<br>  Directors & Officers Liability - $5,000,000 per period<br>  Employment Practices Liability - $5,000,000 per period<br>  Fiduciary Liability - $1,000,000 per period<br>  $5,000,000 aggregate, all parts |
| PHUB398484 | 10/1/12-<br>10/1/13 | Commercial Excess Liability - $20,000,000 Each<br>Occurrence/ General Aggregate and $20,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK926098 or Retained Limit |
| PHPK1082134 | 10/1/13-<br>10/1/14 | Commercial Package Policy<br>  CGL Coverage Part - $1,000,000 Each<br>  Occurrence/$2,000,000 General Aggregate/$2,000,000<br>  Products/Completed Ops Aggregate<br>  Inland Marine Coverage Part – Limits per schedule<br>  Property Coverage Part – Limits per schedule |
| PHSD881849 | 10/1/13-<br>10/1/14 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD882182 | 10/1/13-<br>10/1/14 | Flexiplus Five<br>  Directors & Officers Liability - $5,000,000 per period<br>  Employment Practices Liability - $5,000,000 per period<br>  Fiduciary Liability - $1,000,000 per period<br>  $5,000,000 aggregate, all parts |
| PHUB436466 | 10/1/13-<br>10/1/14 | Commercial Excess Liability - $20,000,000 Each<br>Occurrence/ General Aggregate and $20,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK1082134 or Retained Limit |

| | | |
|---|---|---|
| PHPK1239793 | 10/1/14-<br>10/1/15 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD985681 | 10/1/14-<br>10/1/15 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD983980 | 10/1/14-<br>10/1/15 | Flexiplus Five<br>   Directors & Officers Liability - $5,000,000 per period<br>   Employment Practices Liability - $5,000,000 per period<br>   Fiduciary Liability - $1,000,000 per period<br>   $5,000,000 aggregate, all parts |
| PHUB476208 | 10/1/14-<br>10/1/15 | Commercial Excess Liability - $25,000,000 Each<br>Occurrence/ General Aggregate and $25,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK1239793 or Retained Limit |
| PHPK1399494 | 10/1/15-<br>10/1/16 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD1081973 | 10/1/15-<br>10/1/16 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD1081976 | 10/1/15-<br>10/1/16 | Flexiplus Five<br>   Directors & Officers Liability - $5,000,000 per period<br>   Employment Practices Liability - $5,000,000 per period<br>   Fiduciary Liability - $1,000,000 per period<br>   $5,000,000 aggregate, all parts |
| PHSD1031964 | 10/1/15-<br>10/1/16 | Cyber Security Liability – Limits per schedule with a<br>$2,000,000 aggregate |
| PHUB516250 | 10/1/15-<br>10/1/16 | Commercial Excess Liability - $25,000,000 Each<br>Occurrence/General Aggregate and $25,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK1399494 or Retained Limit |
| PHPK1559201 | 10/1/16-<br>10/1/17 | Commercial Package Policy<br>   CGL Coverage Part - $1,000,000 Each<br>   Occurrence/$2,000,000 General Aggregate/$2,000,000<br>   Products/Completed Ops Aggregate<br>   Inland Marine Coverage Part – Limits per schedule<br>   Property Coverage Part – Limits per schedule |
| PHSD1185270 | 10/1/16-<br>10/1/17 | Employed Lawyers Coverage - $2,000,000 aggregate |

| PHSD1185271 | 10/1/16-<br>10/1/17 | Flexiplus Five<br>    Directors & Officers Liability - $5,000,000 per period<br>    Employment Practices Liability - $5,000,000 per period<br>    $5,000,000 aggregate, all parts |
|---|---|---|
| PHSD1132413 | 10/1/16-<br>10/1/17 | Cyber Security Liability – Limits per schedule with a<br>$2,000,000 aggregate |
| PHSD1185267 | 10/1/16-<br>10/1/17 | Fiduciary Liability - $2,000,000 per period/Aggregate |
| PHUB558598 | 10/1/16-<br>10/1/17 | Commercial Excess Liability - $25,000,000 Each<br>Occurrence/General Aggregate and $25,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK1559201 or Retained Limit |
| PHPK1720575 | 10/1/17-<br>10/1/18 | Commercial Package Policy<br>    CGL Coverage Part - $1,000,000 Each<br>    Occurrence/$2,000,000 General Aggregate/$2,000,000<br>    Products/Completed Ops Aggregate<br>    Inland Marine Coverage Part – Limits per schedule<br>    Property Coverage Part – Limits per schedule |
| PHSD1284562 | 10/1/17-<br>10/1/18 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD1284571 | 10/1/17-<br>10/1/18 | Flexiplus Five<br>    Directors & Officers Liability - $5,000,000 per period<br>    Employment Practices Liability - $5,000,000 per period<br>    $5,000,000 aggregate, all parts |
| PHSD1232113 | 10/1/17-<br>10/1/18 | Cyber Security Liability – Limits per schedule with a<br>$2,000,000 aggregate |
| PHSD1284568 | 10/1/17-<br>10/1/18 | Fiduciary Liability - $2,000,000 per period/Aggregate |
| PHUB602639 | 10/1/17-<br>10/1/18 | Commercial Excess Liability - $25,000,000 Each<br>Occurrence/General Aggregate and $25,000,000<br>Completed Operations Aggregate, excess liability<br>coverages of PHPK1720575 or Retained Limit |
| PHPK1887794 | 10/1/18-<br>10/1/19 | Commercial Package Policy<br>    CGL Coverage Part - $1,000,000 Each<br>    Occurrence/$2,000,000 General Aggregate/$2,000,000<br>    Products/Completed Ops Aggregate<br>    Inland Marine Coverage Part – Limits per schedule<br>    Property Coverage Part – Limits per schedule |
| PHSD1385840 | 10/1/18-<br>10/1/19 | Employed Lawyers Coverage - $2,000,000 aggregate |
| PHSD1385865 | 10/1/18-<br>10/1/19 | Flexiplus Five<br>    Directors & Officers Liability - $5,000,000 per period<br>    Employment Practices Liability - $5,000,000 per period<br>    $5,000,000 aggregate, all parts |
| PHSD1333578 | 10/1/18-<br>10/1/19 | Cyber Security Liability – Limits per schedule with a<br>$2,000,000 aggregate |

| PHSD1385868 | 10/1/18- 10/1/19 | Fiduciary Liability - $2,000,000 per period/Aggregate |
| PHUB649280 | 10/1/18- 10/1/19 | Commercial Excess Liability - $25,000,000 Each Occurrence/General Aggregate and $25,000,000 Completed Operations Aggregate, excess liability coverages of PHPK1887794 or Retained Limit |

26.

The terms, conditions, limitations and exclusions contained in the Policies, including any endorsements thereto, are specifically incorporated herein by reference for all purposes as if copied herein *in extenso*.

27.

PIIC has been put on notice of the above claims under policy numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, PHPK1559201, PHPK1720575, and PHPK7887794 (collectively, "Commercial Package Policies"). These policies contain multiple types of coverage, including Commercial General Liability ("CGL"), Commercial Inland Marine, and Commercial Property. [1]

28.

PIIC has been put on notice of the above claims under policy numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, PHUB516250, PHUB558598, PHUB602639, and PHUB649280 (collectively, "Excess Liability Policies"). These policies generally provide liability coverage in excess to that provided under the CGL Coverage contained in the Commercial Package Policies or the retained

---

[1] These policies also contain Commercial Auto, Employee Benefits, Sexual/Physical Abuse, Liquor Liability, and in some instances, Commercial Crime Coverage Parts. As these coverages are wholly inapplicable to the claims asserted against BVPOA arising out the Stump Dump Fire, they are not specifically addressed herein.

limit indicated in the Declarations if the CGL Coverage does not apply, subject to all terms, limitations, conditions, exclusions, and endorsements contained in those policies.

29.

PIIC has been put on notice of the above claims under policy numbers PHSD581591, PHSD363686, PHSD457716, PHSD562051, PHSD663465, PHSD785550, PHSD881849, PHSD985681, PHSD1081973, PHSD1185270, PHSD1284562, and PHSD1385840 (collectively, "Employed Lawyers Liability Policies").

30.

PIIC has been put on notice of the above claims under policy numbers PHSD282156, PHSD363689, PHSD457235, PHSD562054, PHSD674794, PHSD785560, PHSD882182, PHSD983980, PHSD1081976, PHSD1185271, PHSD1284571, and PHSD1385865 (collectively, "Flexiplus Five Policies"), as well as policy numbers PHSD1185267, PHSD1284568, and PHSD1385868 (collectively, "Fiduciary Liability Policies").

31.

PIIC has been put on notice of the above claims under policy numbers PHSD1031964, PHSD1132413, PHSD1232113, and PHSD1333578 (collectively, "Cyber Security Liability Policies").

## I. DECLARATION OF NO COVERAGE UNDER THE CGL AND EXCESS LIABILITY COVERAGES BECAUSE THOSE COVERAGES ARE SUBJECT TO RESCISSION

32.

Although the fire giving rise to the claims asserted against BVPOA began in July 2018, the BVPOA's potential liability for the various claims asserted against it arises from its operations of the Trafalgar Road Stump Dump from 2003 through 2016.

33.

BVPOA first obtained insurance from PIIC beginning in October 2007.

34.

In order to obtain the insurance, BVPOA submitted an application to PIIC, which application listed 62 properties with a description of operations relative to each, none of which included the Trafalgar Road Stump Dump.

35.

Over the years properties were added and removed from the policies, but the Stump Dump was never identified in any schedule of insured locations.

36.

BVPOA's operations were described to PIIC as including golf clubs/courses and associated maintenance facilities, yacht club(s), tennis facilities, parks/picnic pavilions, docks, irrigation/pump stations, water towers and facilities, public restrooms, and fire stations.

37.

PIIC was never advised that BVPOA operated the Stump Dump or any similar site and, in fact, was advised to the contrary.   When asked if BVPOA had any past, present or discontinued operations involving the storing, treating, discharging, applying, disposing, or transporting of hazardous materials "(e.g., landfills, wastes, fuel tanks, etc.)," BVPOA responded "NO."

38.

If PIIC had been aware of such operations and/or site(s), it would not have written the coverage as it did, if at all.

39.

BVPOA's failure to advise PIIC of the full extent of its operations regarding such waste disposal site(s) was a material misrepresentation, and PIIC is entitled to a declaration rescinding the CGL and Excess Liability coverages.  *See* Ark. Code Ann. §23-79-107(a).

## II.   DECLARATION OF NO COVERAGE UNDER THE CGL AND EXCESS LIABILITY COVERAGES BECAUSE THE CLAIMS DO NOT FALL WITHIN THE INSURING AGREEMENTS

40.

Even if the CGL and Excess Liability Coverages remain in effect, coverage is not provided because the claims asserted against BVPOA are not claims for damages because of "bodily injury" or "property damage" caused by an "occurrence" as required by the CGL Coverage in the Commercial Package Policies and the Excess Liability Policies.

### A.   <u>Certain Policies Are Not Triggered</u>

41.

The Insuring Agreements in the CGL Coverage contained in the Commercial Package Policies and the Excess Liability Policies generally provide coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," which "bodily injury" or "property damage" must occur during the respective policy periods.

42.

Under applicable law, "bodily injury" or "property damage" occurs when there is an injury-in-fact.  *See Unigard Security Ins. Co. v. Murphy Oil USA, Inc.,* 962 S.W.2d 735, 738-39 (Ark. 1998).

43.

All alleged "bodily injury" or "property damage," if any, occurred in July 2018 (when the Stump Dump Fire allegedly ignited) or thereafter.

44.

PIIC is entitled to a declaration that the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, and PHPK1559201 (the Commercial Package Policies in effect from October 1, 2007 through October 1, 2017) do not provide coverage because those policies are not triggered as there was no "bodily injury" or "property damage" that occurred during those policy periods.

45.

PIIC is entitled to a declaration that Excess Liability Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, PHUB516250, and PHUB558598 (the Excess Liability Policies in effect from October 1, 2007 through October 1, 2017) do not provide coverage because those policies are not triggered as there was no "bodily injury" or "property damage" that occurred during those policy periods.

### B. The Claims Asserted In The *Parsons* Suit Are Not Claims For Damages Because Of "Bodily Injury" Or "Property Damage" Caused By An "Occurrence"

46.

The Insuring Agreements in the CGL coverage contained in the Commercial Package Policies and the Excess Liability Policies generally provide coverage for damages because of

"bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies.

47.

"Occurrence" generally is defined as an accident.

48.

The claims asserted in the *Parsons* Suit are illegal exaction claims such that Mr. Parsons is not seeking damages for "property damage" but is seeking the return of taxpayer funds expended in responding to the Stump Dump Fire to the state treasury.

49.

The alleged illegal taking of public funds was not caused by an "occurrence" or an accident but by the deliberate actions of the governor.

50.

The alleged illegal taking of public funds also does not constitute damages because of "bodily injury" or "property damage."

51.

PIIC is entitled to a declaration that the CGL Coverage in the Commercial Package Policies and the Excess Liability Policies do not provide coverage for the claims asserted in the *Parsons* Suit as they do not constitute claims for damages because of "bodily injury" or "property damage" caused by an "occurrence". Thus, PIIC does not have a duty to defend or indemnify BVPOA for the claims asserted in the *Parsons* Suit.

**C. The Claims Asserted By The ADEQ Are Not Claims For Damages Because Of "Bodily Injury" Or "Property Damage" Caused By An "Occurrence"**

52.

The Insuring Agreements in the CGL Coverage contained in the Commercial Package Policies and the Excess Liability Policies generally provide coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies.

53.

The ADEQ has asserted claims against BVPOA for response costs relative to extinguishing the Stump Dump Fire and remediating the Stump Dump site. The 8th Circuit has determined that such response costs are not considered legal damages for liability insurance purposes. *See Continental Ins. Cos. v. NEPACCO,* 842 F.2d 977 (8th Cir. 1987).

54.

PIIC is entitled to a declaration that the CGL Coverage in the Commercial Package Policies and the Excess Liability Policies do not provide coverage for the claims asserted by the ADEQ as they are not legal damages. Consequently, PIIC has no duty to defend or indemnify BVPOA for the claims asserted by the ADEQ.

**III. DECLARATION OF NO COVERAGE BECAUSE THE CLAIMS ASSERTED AGAINST BVPOA ARE EXCLUDED BY THE POLLUTION EXCLUSION**

55.

The CGL Coverage in the Commercial Package Policies and the Excess Liability Policies contain Exclusions that generally preclude coverage for "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" from a site used at any time for the disposal of waste.

20

56.

The CGL Coverage in the Commercial Package Policies and the Excess Liability Policies contain Exclusions that preclude coverage for requests, demands, or orders to clean up, remove, contain, or in any way respond to "pollutants."

57.

"Pollutants" include smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

58.

In the alternative, if it is determined that the claims in the *Parsons* Suit fall within the Insuring Agreements in the CGL Coverage of the Commercial Package Policies or the Excess Liability Policies, those claims are excluded from coverage as any alleged "property damage" was caused by the release or dispersal of "pollutants" from a site which was used for the disposal of waste or arise out of a request to respond to the release or dispersal of "pollutants."

59.

The claims asserted in the *Macomber* Suit also are excluded from coverage by the Pollution Exclusions in the CGL Coverage in the Commercial Package Policies and the Excess Liability Policies, as the *Macomber* plaintiffs allege that defendants, including BVPOA, operated the Stump Dump as "an illegal solid waste disposal facility"; assert claims for bodily injury and property damage as a result of the "hazardous smoke" emitted from the Stump Dump Fire; and further allege that the EPA detected the presence of SVOCs and VOCs, which indicated the "presence of burning waste," which "likely includes construction debris, including plastics and other potentially toxic materials" that BVPOA permitted disposal of during its operation of the Stump Dump.

60.

In the alternative, if it is determined that the claims asserted by the ADEQ are considered claims for damages that fall within the Insuring Agreements in the CGL Coverage of the Commercial Package Policies or the Excess Liability Policies, those claims are excluded from coverage as any alleged "property damage" was caused by the release or dispersal of "pollutants" from a site which was used for the disposal of waste or arise out of a request to respond to the release or dispersal of "pollutants."

61.

PIIC is entitled to a declaration that it does not owe BVPOA a duty to defend or indemnify it for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, or by the ADEQ because those claims are excluded from coverage by the Pollution Exclusions in the CGL Coverage in the Commercial Package Policies and the Excess Liability Policies.

## IV.  DECLARATION OF NO COVERAGE BECAUSE THE STUMP DUMP WAS NOT A SCHEDULED LOCATION

62.

The CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, and PHPK1399494 and Excess Liability Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 contain a Limitation of Coverage to Designated Premises or Project Endorsement that limits coverage to "bodily injury" or "property damage" arising out of the use of Scheduled premises.

63.

The claims against BVPOA for alleged "bodily injury" and "property damage," if any, in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ arise out of BVPOA's use of, or operations necessary or incidental to, the Stump Dump.

64.

The Stump Dump was not a Scheduled location on Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250.

65.

In the alternative, if it is determined that the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, and PHPK1559201 and Excess Liability Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 are triggered, PIIC is entitled to a declaration that it has no duty to defend or indemnify BVPOA under the CGL Coverage Part and Excess Liability Coverage in those policies for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ because the claims arise out of the use of a non-Scheduled location.

## V.   DECLARATION OF NO COVERAGE FOR CLAIMS FOR "PROPERTY DAMAGE" TO PROPERTY RENTED OR OCCUPIED BY BVPOA

66.

The CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, and

PHPK1399494 contains a Damage to Property Exclusion that precludes coverage for "property damage" to property rented to or occupied by BVPOA, including costs or expenses incurred to repair or restore such property for any reason.

67.

The Excess Liability Coverage in Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 contains an exclusion that precludes coverage for "property damage" to property occupied or used by, or rented to, BVPOA.

68.

BVPOA leased the Stump Dump site from Tom Fredericks and/or Blue Mountain Storage from January 1, 2003 through December 31, 2016.

69.

The claims asserted against BVPOA by the ADEQ are claims for remediating and restoring the Stump Dump site.

70.

In the alternative, if it is determined that the claims asserted in the *Parsons* suit are claims for damages because of "property damage," those claims are for response costs to remediate the Stump Dump site.

71.

PIIC is entitled to a declaration that it has no duty to defend or indemnify BVPOA under the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, and PHPK1399494 and the Excess Liability Coverage in Policy Numbers PHUB095956,

24

PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 for the claims asserted by the ADEQ and in the *Parsons* suit as coverage is precluded by the Damage to Property Exclusion.

## VI. DECLARATION OF NO COVERAGE UNDER THE COMMERCIAL INLAND MARINE COVERAGE PARTS IN THE COMMERCIAL PACKAGE POLICIES

72.

The Commercial Inland Marine Coverage Parts in the Commercial Package Policies generally provide coverage for damage to certain scheduled and unscheduled movable property owned by or in the care, custody, and control of BVPOA, such as equipment and fine arts, which coverage is not implicated by the claims asserted against BVPOA.

73.

The Contractor's Equipment Coverage Form in the Commercial Inland Marine Coverage Part in Policy Numbers PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, PHPK1559201, PHPK1720575, and PHPK7887794 contains a coverage extension for Pollutant Clean Up and Removal, which provides a limited coverage for pollutant clean-up and removal where the dispersal or discharge of the pollutant is caused by direct physical loss to Covered Property, which is BVPOA's equipment.

74.

The claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ do not arise from the release of a pollutant caused by direct physical loss to BVPOA's equipment.

75.

The Fine Arts Coverage Form in the Commercial Inland Marine Coverage Part in Policy Numbers PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, PHPK1559201, PHPK1720575, and PHPK7887794 and the Miscellaneous Coverage Form in the Commercial Inland Marine Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679 PHPK1559201, PHPK1720575, and PHPK7887794 contain a coverage extension for Pollutant Clean Up and Removal, which provides a limited coverage for pollutant clean-up and removal where there is a dispersal or discharge of a "pollutant" as a result of a Covered Cause of Loss.  "Pollutant" generally is defined as Covered Property that becomes a contaminant.

76.

The claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ do not arise from the release of "pollutants", as defined above and in the Policies.

77.

PIIC is entitled to a declaration that the Commercial Inland Marine Coverage Part in the Commercial Package Policies, including the Pollutant Clean Up and Removal Coverage Extensions, do not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

## VII.  DECLARATION OF NO COVERAGE UNDER THE COMMERCIAL PROPERTY COVERAGE PARTS IN THE COMMERCIAL PACKAGE POLICIES

78.

The Commercial Property Coverage Part in the Commercial Package Policies generally provides coverage for damage to scheduled real property and business personal property owned by the insured, which coverage does not apply to the claims asserted against BVPOA as those claims are not for damage to BVPOA's property.  Additionally, the Stump Dump site was never included on the schedule of insured locations.

79.

The Commercial Property Coverage Part contains an Additional Coverage for Pollutant Clean Up and Removal, which provides a limited coverage for pollutant clean-up and removal where a discharge or dispersal of "pollutants" results from direct physical loss to Covered Property (which is business personal property or buildings at scheduled locations).

80.

The claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ do not arise from any direct physical loss to Covered Property.

81.

PIIC is entitled to a declaration that the Commercial Property Coverage Part in the Commercial Package Policies, including the Additional Coverage for Pollutant Clean Up and Removal, does not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

27

## VIII.   DECLARATION OF NO COVERAGE UNDER THE EMPLOYED LAWYERS LIABILITY POLICIES

### A.   The Claims Asserted Against BVPOA Do Not Fall Within the Insuring Agreements in the Employed Lawyers Liability Policies

82.

The Employed Lawyers Liability Policies generally provide coverage for **Wrongful Acts,** which are defined as "any actual or alleged…negligent act, error, omission, breach of duty, misstatement or misleading statement allegedly committed or omitted …by an **Individual Insured** but solely in the performance of **Legal Professional Services**."

83.

No claims have been asserted against any **Individual Insured**, as defined in the policies.

84.

No claims have been asserted arising out of the performance of **Legal Professional Services**, as defined in the policies.

85.

PIIC is entitled to a declaration that the Employed Lawyers Liability Policies do not provide coverage for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

### B.   Coverage For the Claims Asserted Against BVPOA Is Excluded by the Pollution Exclusion in the Employed Lawyers Liability Policies

86.

In the alternative, if it is determined that the claims asserted against BVPOA fall within the Insuring Agreements in the Employed Lawyers Liability Policies, coverage for all claims is excluded by the Pollution Exclusion contained in the policies.

87.

The Employed Lawyers Liability Policies contain an exclusion that generally excludes coverage for claims arising out of the discharge or dispersal of hazardous substances, smoke, vapors, soot, fumes, waste materials, or pollutants, as well as any governmental directive or request to clean up, remove, contain or neutralize any pollutants.

88.

PIIC is entitled to a declaration that the Pollution Exclusion contained in the Employed Lawyers Liability Policies excludes coverage for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

C. **Coverage for the Claims Asserted Against BVPOA Is Excluded by the Bodily Injury and Property Damage Exclusion Contained in the Employed Lawyers Liability Policies**

89.

In the alternative, if it is determined that the claims asserted against BVPOA fall within the Insuring Agreements in the Employed Lawyers Liability Policies, the policies contain an exclusion that precludes coverage for any claims arising out of or based upon "bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property."

90.

PIIC is entitled to a declaration that the Bodily Injury and Property Damage Exclusion contained in the Employed Lawyers Liability Policies excludes coverage for the claims asserted in the *Macomber* Suit.

### D. **Certain Policies Are Not Triggered**

91.

In the alternative, the Employed Lawyers Liability Policies are claims made and reported policies which require a claim to be made against BVPOA during the respective policy period and reported to PIIC as soon as practicable, but no later than 60 days after the expiration of the policy.

92.

The first notice of any claim related to the Stump Dump Fire was received by PIIC on February 7, 2019.

93.

Policy numbers PHSD581591, PHSD363686, PHSD457716, PHSD562051, PHSD663465, PHSD785550, PHSD881849, PHSD985681, PHSD1081973, PHSD1185270, and PHSD1284562 (Employed Lawyers Liability Policies in effect from October 1, 2007 through October 1, 2018) are not applicable, as claims were not made against BVPOA and reported to PIIC within the required periods.

94.

PIIC is entitled to a declaration that coverage is not provided by policy numbers PHSD581591, PHSD363686, PHSD457716, PHSD562051, PHSD663465, PHSD785550, PHSD881849, PHSD985681, PHSD1081973, PHSD1185270, and PHSD1284562 because claims were not made against BVPOA and reported to PIIC as required by the terms of those policies.

## IX.   DECLARATION OF NO COVERAGE UNDER THE FLEXIPLUS FIVE AND FIDUCIARY LIABILITY POLICIES

95.

The Flexiplus Five Policies generally provide Directors & Officers Liability Coverage, Employment Practices Liability Coverage, and Fiduciary Liability Coverage.[2]

### A. <u>The Claims Asserted Against BVPOA Do Not Fall Within the Insuring Agreements of the Employment Practices Coverage or the Fiduciary Liability Coverage</u>

96.

The Employment Practices Liability Coverage generally provides coverage for claims made against BVPOA for various employment-related practices, as outlined in the policies.

97.

There are no claims made against BVPOA arising out of employment-related practices.

98.

The Fiduciary Liability Coverage, both in the Flexiplus Five Policies and in the Fiduciary Liability Policies, generally provides coverage for claims made against BVPOA for acts or omissions of BVPOA in administering employee benefit plans.

99.

There are no claims made against BVPOA regarding any acts or omissions in administering employee benefit plans.

100.

PIIC is entitled to a declaration that the Employment Practices Liability Coverage and the Fiduciary Liability Coverage in the Flexiplus Five Policies and the Fiduciary Liability Policies do not provide coverage for the claims asserted against BVPOA.

---

[2] Policy numbers PHSD1185271, PHSD1284571, and PHSD1385865 do not provide Fiduciary Liability Coverage.

### B. Coverage for the Claims Asserted Against BVPOA Is Excluded by the Pollution Exclusion in the Flexiplus Five Policies and Fiduciary Liability Policies

101.

Coverage for all claims asserted against BVPOA is excluded by the Pollution Exclusion contained in the Flexiplus Five and the Fiduciary Liability Policies, which exclude coverage for claims arising out of the discharge or dispersal of hazardous substances, smoke, vapors, soot, fumes, waste materials, or pollutants, as well as any governmental directive or request to clean up, remove, contain or neutralize any pollutants..

102.

PIIC is entitled to a declaration that the Pollution Exclusion contained in the Flexiplus Five and the Fiduciary Liability Policies excludes coverage for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

### C. Coverage for the Claims Asserted Against BVPOA Is Excluded by the Bodily Injury and Property Damage Exclusion Contained in the Flexiplus Five and Fiduciary Liability Policies

103.

Coverage for all claims asserted in the *Macomber* suit is excluded by an exclusion that precludes coverage for any claims arising out of or based upon "bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property, including loss of use thereof…" contained in the Flexiplus Five and Fiduciary Liability Policies.

104.

PIIC is entitled to a declaration that the Bodily Injury and Property Damage Exclusion contained in the Flexiplus Five and Fiduciary Liability Policies excludes coverage for the claims asserted in the *Macomber* Suit.

### D.  Certain Policies Are Not Triggered

105.

The Flexiplus Five and Fiduciary Liability Policies are claims made and reported policies which require a claim to be made against BVPOA during the respective policy period and reported to PIIC as soon as practicable, but no later than 60 days after the expiration of the policy.

106.

The first notice of any claim related to the Stump Dump Fire was received by PIIC on February 7, 2019.

107.

Policy numbers PHSD282156, PHSD363689, PHSD457235, PHSD562054, PHSD674794, PHSD785560, PHSD882182, PHSD983980, PHSD1081976, PHSD1185271, PHSD1284571, PHSD1185267, and PHSD1284568 (Flexiplus Five and Fiduciary Liability Policies in effect from October 1, 2007 through October 1, 2018) are not applicable, as claims were not made against BVPOA and reported to PIIC within the required periods.

108.

PIIC is entitled to a declaration that coverage is not provided by policy numbers PHSD282156, PHSD363689, PHSD457235, PHSD562054, PHSD674794, PHSD785560, PHSD882182, PHSD983980, PHSD1081976, PHSD1185271, PHSD1284571, PHSD1185267, and PHSD1284568 because claims were not made against BVPOA and reported to PIIC as required by the terms of those policies.

## X.    DECLARATION OF NO COVERAGE UNDER THE CYBER SECURITY LIABILITY POLICIES

109.

The Cyber Security Liability Policies generally provide coverage for Loss of Digital Assets; Business Interruption and Extra Expense as a result of failure of computer systems; Cyber Extortion Threat; Security Event Costs due to a security breach, Network Security and Privacy Liability related to a security breach; Employee Privacy Liability Coverage; Electronic Media Liability Coverage; and Cyber Terrorism Coverage.

110.

The claims asserted against BVPOA do not fall within the Insuring Agreements for Loss of Digital Assets; Business Interruption and Extra Expense as a result of failure of computer systems; Cyber Extortion Threat; Security Event Costs due to a security breach, Network Security and Privacy Liability related to a security breach; Employee Privacy Liability Coverage; Electronic Media Liability Coverage; and Cyber Terrorism Coverage.

111.

PIIC is entitled to a declaration that the Cyber Security Liability Policies do not provide coverage for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ.

112.

Without limitation of the foregoing, PIIC reserves all rights to deny coverage under the Policies for the claims and causes of action asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ, including any future claims and/or lawsuits, based upon the terms, conditions, limitations, and exclusions contained in the Policies, including any exclusions therein and endorsements thereto, which are specifically incorporated herein for all purposes as if copied herein *in extenso*.

**WHEREFORE**, plaintiff, Philadelphia Indemnity Insurance Company, hereby prays that this Honorable Court grant the following relief:

1.  A declaration rescinding the CGL Coverage Part in the Commercial Package Policies and the Excess Liability Policies because BVPOA's failure to disclose that its operations included the Stump Dump was a material misrepresentation;

2.  Alternatively, a declaration that the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, PHPK1399494, and PHPK1559201 do not provide coverage because those policies are not triggered as there was no "bodily injury" or "property damage" that occurred during those policy periods, and PIIC does not have a duty to defend or indemnify BVPOA under those policies for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

3.  Alternatively, a declaration that Excess Liability Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, PHUB516250, and PHUB558598 do not provide coverage because those policies are not triggered as there was no "bodily injury" or "property damage" that occurred during those policy periods, and PIIC does not have a duty to defend or indemnify BVPOA under those policies for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;;

4.  Alternatively, a declaration that the CGL Coverage Part in the Commercial Package Policies and the Excess Liability Policies do not provide coverage for the claims asserted in the *Parsons* Suit as they do not constitute claims for damages because of "bodily injury" or "property damage" caused by an "occurrence," and PIIC does not have a duty to defend or indemnify BVPOA for the claims asserted in the *Parsons* Suit;

5.  Alternatively, a declaration that the CGL Coverage Part in the Commercial Package Policies and the Excess Liability Policies do not provide coverage for the claims asserted by the ADEQ as they do not constitute legal damages under the insuring agreement, and PIIC does not have a duty to defend or indemnify BVPOA for the claims asserted by the ADEQ;

6.  Alternatively, a declaration that coverage for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ is excluded under the CGL Coverage Part in the Commercial Package Policies and the Excess Liability Policies by the Pollution Exclusions contained in those policies, and PIIC does not have a duty to defend or indemnify BVPOA for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

7.  Alternatively, a declaration that the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, and PHPK1399494 and Excess Liability Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 do not provide coverage, in accordance with the Limitation of Coverage to Designated Premises Endorsement, because any alleged "bodily injury" or "property damage" arose out of the use of non-Scheduled premises, and PIIC does not have a duty to defend or indemnify BVPOA under those policies for the claims asserted in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

8.  Alternatively, a declaration that coverage for the claims asserted against BVPOA by the ADEQ and in the *Parsons* Suit is excluded under the CGL Coverage Part in Policy Numbers PHPK264151, PHPK349484, PHPK475412, PHPK629679, PHPK778097, PHPK926098, PHPK1082134, PHPK1239793, and PHPK1399494 and the Excess Liability Coverage in Policy Numbers PHUB095956, PHUB252695, PHUB286087, PHUB322597, PHUB360505, PHUB398484, PHUB436466, PHUB476208, and PHUB516250 by the Damage to Property Exclusions in those policies, and PIIC does not have a duty to defend or indemnify BVPOA under those policies for the claims asserted in the *Parsons* Suit and by the ADEQ;

9.  A declaration that the Commercial Inland Marine Coverage Part in the Commercial Package Policies, including the Coverage Extensions for Pollutant Clean Up And Removal, does not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

10. A declaration that the Commercial Property Coverage Part in the Commercial Package Policies, including the Additional Coverage for Pollutant Clean Up and Removal, does not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

11. A declaration that the Employed Lawyers Liability Policies do not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ, as those claims do not fall within the insuring agreements in those policies;

12. Alternatively, a declaration that the Pollution Exclusion in the Employed Lawyers Liability Policies excludes coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ;

13. Alternatively, a declaration that the Bodily Injury and Property Damage Exclusion in the Employed Lawyers Liability Policies excludes coverage for the claims asserted against BVPOA in the *Macomber* Suit;

14.    Alternatively, a declaration that coverage is not provided for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ under Employed Lawyers Liability Policy Numbers PHSD581591, PHSD363686, PHSD457716, PHSD562051, PHSD663465, PHSD785550, PHSD881849, PHSD985681, PHSD1081973, PHSD1185270, and PHSD1284562 because claims were not made against BVPOA and reported to PIIC as required by the terms of those policies;

15.    A declaration that the Employment Practices Liability Coverage and the Fiduciary Liability Coverage in the Flexiplus Five Policies and the Fiduciary Liability Policies do not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ because those claims do not fall within the insuring agreements of those coverage parts;

16.    A declaration that coverage under the Flexiplus Five Policies and the Fiduciary Liability Policies for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ is excluded by the Pollution Exclusions contained in those policies;

17.    A declaration that coverage under the Flexiplus Five Policies and the Fiduciary Liability Policies for the claims asserted against BVPOA in the *Macomber* Suit are excluded by the Bodily Injury and Property Damage Exclusions in those policies;

18.    Alternatively, a declaration that coverage is not provided for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ under Flexiplus Five Policy Numbers PHSD282156, PHSD363689, PHSD457235, PHSD562054, PHSD674794, PHSD785560, PHSD882182, PHSD983980, PHSD1081976, PHSD1185271, and PHSD1284571, and Fiduciary Liability Policy Numbers PHSD1185267 and PHSD1284568 because claims were not made against BVPOA and reported to PIIC as required by the terms of those policies;

19.    A declaration that the Cyber Security Liability Policies do not provide coverage for the claims asserted against BVPOA in the *Parsons* Suit, in the *Macomber* Suit, and by the ADEQ because those claims do not fall within the insuring agreements contained in those policies;

20.    All costs of this lawsuit; and

21.    All further necessary or proper relief to which PIIC may be justly entitled to receive.

Respectfully submitted,

**LARZELERE PICOU WELLS**
    **SIMPSON LONERO, LLC**
Suite 500 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA   70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565

BY:    */s/ Jay M. Lonero*
       **JAY M. LONERO, T.A. (La. No. 20642)**
           **jlonero@lpwsl.com**
       **ANGIE ARCENEAUX AKERS (La. No. 26786)**
           **aakers@lpwsl.com**

       **COUNSEL FOR PHILADELPHIA**
       **INDEMNITY INSURANCE COMPANY**